Ronnie MILLER, Plaintiff,

v.

BANK OF AMERICA, NATIONAL AS-SOCIATION; BAC Home Loans Servicing, L.P.; Experian Services Corporation; Equifax Inc.; TransUnion Corporation; and Does 1 through 20, inclusive, Defendants.

Case No. 3:11–cv–02588–MMA (BGS).

United States District Court,
S.D. California.

March 14, 2012.

Monica L. Montgomery, Law Office of Monica L. Montgomery, San Diego, CA, for Plaintiff.

Jonathan M. Hurst, Bryan Cave LLP, Rana Nader, Jones Day, Irvine, CA, Donald E. Bradley, Musick Peeler and Garrett, Costa Mesa, CA, Thomas P. Quinn, Jr., Nokes and Quinn, Laguna Beach, CA, Stephanie Cope, King and Spalding LLP, Atlanta, GA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MICHAEL M. ANELLO, District Judge.

On November 14, 2011, Defendant Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, L.P., ("BAC" or "Defendant") filed a motion to dismiss Plaintiff Ronnie Miller's first amended complaint ("FAC") for failure to state a claim upon which relief can be granted. [Doc. No. 12–1.][1] Plaintiff filed an opposition to Defendant's motion to dismiss [Doc. No. 17], and Defendant filed a reply [Doc. No. 19]. On January 13, 2012, the Court deemed the matter suitable for decision on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). [Doc. No. 20.] For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

### BACKGROUND

This action arises from events related to Plaintiff's short sale of real property located at 2436 Adirondack Row # 2, San Diego, California 92139 (the "Property"), which resulted in Defendant BAC reporting inaccurate information on Plaintiff's credit report. [FAC, Doc. No. 1, Exh. A. ¶ 11.][2] Plaintiff originally purchased the Property in December 1991 for $73,950 through lender United Savings Association of Texas. [Id.][3] On or about December 8, 2005, Plaintiff refinanced the Property through First Magnus Financial Corporation, obtaining a loan in the amount of $240,000. [Id. ¶ 12.] Ultimately, Plaintiff decided to sell the Property and sold it for $118,437 via a short sale on November 18, 2008. [Id. ¶ 16.] Plaintiff alleges at the time of the short sale he was informed that this type of transaction would reflect less negatively on his credit report than a foreclosure. [Id. ¶ 17.] According to Plaintiff, he was also told that although the short sale would leave a negative mark on his credit report, he would be able to refinance his primary residence two years after the short sale. [Id.]

In or around February 2010, Plaintiff checked his credit report in anticipation of refinancing his primary residence later that year and learned for the first time that Defendant incorrectly reported the short sale of the Property as a foreclosure. [Id. ¶ 18.] Plaintiff contacted Defendant regarding the inaccuracy and received two letters in response, dated April 19, 2010 [Doc. No. 1, Exh. 1] and April 26, 2010 [ Id. Exh. 2], each stating his request for credit correction was approved and formal requests were sent to the credit reporting agencies, Equifax Credit Information Services, Experian Services Corporation, TransUnion Corporation, and Innovis Data Solutions. [FAC ¶ 19.] Thereafter, Plaintiff called Defendant on June 7, July 2,

---

1. Defendants Experian Services Corporation, TransUnion Corporation, and Equifax Inc. answered in November 2011. [*See* Doc. Nos. 9–10, 15.]

2. Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations of the complaint in ques-

tion. *Hosp. Bldg. Co. v. Rex Hosp. Tr.,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). All facts cited are taken from Plaintiff's FAC unless otherwise noted.

3. While it is unclear whether Plaintiff purchased the Property as an investment, it appears not to be his primary residence.

July 14, July 16, July 17, July 19, and August 2, 2010, to check the status of the correction. [*Id.* ¶¶ 22, 25–26, 29.] During each call, Plaintiff was assured the request for a credit correction had been sent to the credit reporting agencies. [*Id.*]

On October 26, 2010, Plaintiff and his loan officer ran a credit report to determine Plaintiff's eligibility to refinance the loan on his primary residence. [*Id.* ¶ 32.] The report showed two 30–day late payments and a foreclosure on the Property. [*Id.* ¶ 33.] Plaintiff alleges these negative marks on his credit report made him ineligible to refinance his primary residence loan. [*Id.* ¶ 36.] Accordingly, Plaintiff notified Equifax, TransUnion, and Experian on November 9, 2010 about Defendant BAC's negative and inaccurate reporting. [*Id.* ¶ 40.] All three agencies replied that the credit report on the Property did not show any late payments. [*Id.* ¶¶ 41–43.] Plaintiff therefore alleges the credit reporting agencies are "fraudulently giving out misinformation to the lenders so as to allow the lenders to deny credit and/or to allow the lenders to offer higher interest rates for consumers." [*Id.* ¶ 45.] Plaintiff also asserts Defendant BAC continues to willfully and inaccurately report Plaintiff's credit history with respect to the Property. [*Id.* ¶ 44.]

Plaintiff filed this action in the Superior Court of California, San Diego Judicial District, Central Division on September 23, 2011. [Doc. No. 1 ¶ 1.] Plaintiff's FAC alleges seven causes of action for: (1) Violation of the Consumer Credit Reporting Agencies Act, Cal. Civ.Code § 1785.25(a); (2) Violation of the Consumer Credit Reporting Agencies Act, Cal. Civ.Code § 1785.14(b); (3) Violation of Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785.16; (4) Negligence; (5) Intentional infliction of emotional distress; (6) Negligent infliction of emotional distress; and (7) Violation of California's Unfair Competition Law, Cal. Bus. & Prof.Code §§ 17200 *et seq.* On November 7, 2011, Defendant Equifax Inc. removed the complaint to this Court based on federal question jurisdiction because Plaintiff's Unfair Competition Law claim is premised on violations of federal law. [*Id.*] On November 14, 2011, Defendant BAC filed a motion to dismiss Plaintiff's entire FAC under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal marks and citations omitted).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–8 (9th Cir.1996). Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987); *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. Fed. Deposit Ins. Corp.,* 139 F.3d 696, 699 (9th Cir.1998).

When a claim is dismissed for failure to state a claim, leave to amend should be granted "unless the court determines the allegation of other facts consistent with the challenged pleadings could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)). In other words, a court may grant a motion to dismiss and dismiss the claim with prejudice where amendment would be futile. *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

### I. CALIFORNIA'S UNFAIR COMPETITION LAW

Plaintiff's seventh cause of action asserts Defendant BAC violated California's Unfair Competition Law ("UCL") by using unfair, unlawful, and fraudulent business practices with respect to the credit reporting of the Property. [FAC ¶¶ 84–85.] While Plaintiff's complaint contains minimal detail, his allegations are based on two primary theories. First, Plaintiff asserts Defendant violated the UCL's unlawful prong by providing Plaintiff and his representatives with false, deceptive and misleading information in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 *et seq.* [*Id.* ¶ 87.] Next, Plaintiff alleges Defendant failed to comply with provisions in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq.*, by failing to investigate and correctly report credit information, which violates the unlawful, fraudulent, and unfair prongs of the UCL. [*Id.* ¶¶ 84–85.] In response, Defendant moves to dismiss Plaintiff's entire UCL claim on the ground that it is preempted by section 1681t(b)(1)(F)(ii) of

the FCRA. [Doc. 12–1, p. 4.][4] The Court agrees, in part.

### (A) Unlawful Business Practices Predicated on FDCPA Violations

The FDCPA aims to eliminate abusive debt collection practices by prohibiting debt collectors from using false, deceptive, or misleading practices in connection with the collection of debts. 15 U.S.C. §§ 1692(e), 1692e; *Winter v. I.C. Sys.*, 543 F.Supp.2d 1210, 1212 (S.D.Cal.2008). The statute defines a debt as "any obligation or alleged obligation of a consumer to pay money...." 15 U.S.C. § 1692a(5). To bring a FDCPA action against a debt collector, the debt collector's misconduct must have occurred during an attempt to collect a present debt. *Winter*, 543 F.Supp.2d at 1214 (quoting *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1167 (3d Cir.1987)). Accordingly, conduct by a *former* debt collector—even if otherwise prohibited—is not actionable under the statute because the activities must occur "in connection" with a present debt collection proceeding. *Id.* at 1213 (quoting *Posso v. Asta Funding Inc.*, 2007 WL 3374400 *3, 2007 U.S. Dist. LEXIS 83741 *3 (N.D.Ill. Nov. 9, 2007)). For example, if the debtor has settled the debt (or paid the debt in full) and the debt collector has acknowledged satisfaction of the debt, then an action under the FDCPA cannot be sustained. *Narog v. Certegy Check Serv.*, 759 F.Supp.2d 1189, 1193 (N.D.Cal.2011).

*Narog* is instructive. In *Narog*, the plaintiff alleged the defendant inaccurately reported a debt to credit reporting agencies in violation of the FDCPA. *Id.* The court granted the defendant's motion to dismiss without leave to amend because the conduct alleged occurred after the debt

---

**4.** Defendant erroneously cites 15 U.S.C. § 1681t(b)(1)(F)(ii) as 15 U.S.C. § 181t(b)(1)(F)(ii).

collection process terminated. *Id.* In effect, the plaintiff's FDCPA claim failed because it was not based on an existing debt and there were no ongoing debt collection proceedings. *Id.* Also, the plaintiff's credit history report reflected a $0 balance on the account, which the court concluded was dispositive evidence that a debt no longer existed, and that the debt collector had acknowledged there was no debt owed. *Id.*

As in *Narog,* Defendant BAC's misconduct is not actionable under the FDCPA because it occurred after Plaintiff's debt with Defendant was settled. Plaintiff alleges Defendant made false statements regarding the status of his request to correct the inaccuracies in his credit report beginning in April 2010. [FAC ¶¶ 20, 22, 25–26, 28–31.] However, when Plaintiff sold the Property via short sale in November 2008, Plaintiff satisfied its debt to BAC. [*Id.* ¶¶ 12–13.] Thus, BAC's allegedly wrongful conduct occurred more than a year after the debt was settled. The credit reports from October and December 2010 attached to Plaintiff's complaint confirm that the BAC account is closed and has a current balance of $0. [*Id.* Exhs. 3–4.] Therefore, Plaintiff cannot state a claim under the FDCPA because BAC's allegedly false statements cannot be deemed to be "in connection" with a present debt collection proceeding. Because Plaintiff cannot seek recovery under the FDCPA for misconduct that occurred after the pertinent debt was settled, the Court concludes leave to amend would be futile and Plaintiff's claim is subject to dismissal with prejudice. In addition, the alleged FDCPA violation cannot serve as a predicate act for a UCL claim.

**(B) Unlawful Business Practices Predicated on FCRA Violations**

■ The FCRA requires credit reporting agencies to adopt reasonable procedures related to the collection, communication, and use of consumer credit information to ensure fair and accurate credit reporting. 15 U.S.C. § 1681e; *Roybal v. Equifax,* 405 F.Supp.2d 1177, 1181 (E.D.Cal.2005). To attain this goal, the FCRA places duties on the persons who furnish credit reporting agencies with information such as BAC. 15 U.S.C. § 1681s–2; *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1153 (9th Cir.2009).

Section 1681s–2 sets forth two categories of duties for furnishers of credit information. *Wang v. Asset Acceptance LLC,* 2010 WL 2985503 *2–3, 2010 U.S. Dist. LEXIS 91946 *6–7 (N.D.Cal. July 27, 2010). First, subsection (a) restricts furnishers from reporting information if they "know or have reasonable cause to believe" the information is inaccurate. 15 U.S.C. § 1681s–2(a)(1). This subsection also requires furnishers to correct and update information if they later determine the reported information is inaccurate. *Id.* at § s–2(a)(2). Private plaintiffs cannot bring an action against furnishers of credit information under this subsection. *Gorman,* 584 F.3d at 1154 (stating the duties imposed on furnishers under section 1681s–2(a) are enforceable only by federal or state agencies).

■ Second, under subsection (b), when a furnisher is notified by a credit reporting agency that a consumer disputes the reported information, the furnisher is required to review, investigate, and compile a report regarding the disputed information. 15 U.S.C. § 1681s–2(b); *Wang,* 2010 WL 2985503 *2–3, 2010 U.S. Dist. LEXIS 91946 *7. Consumers may bring a private right of action under subsection (b), but only if they first notify the national credit reporting agencies of the disputed information and the furnisher fails to conduct a reasonable investigation. *Nelson v. Equi-*

*fax Info. Serv.*, 522 F.Supp.2d 1222, 1231 (C.D.Cal.2007).

In this case, Plaintiff predicates a UCL claim on allegations that Defendant violated subsections (a) and (b), because BAC reported inaccurate information to the credit reporting agencies and failed to conduct a reasonable investigation after being notified that Plaintiff disputed the report. [FAC ¶¶ 84–86.] Plaintiff cannot bring a private cause of action under subsection (a), but may be able to bring a successful private action under subsection (b). Plaintiff notified the credit reporting agencies in April, June, and November 2010 that he disputed the information reported by Defendant BAC, but Defendant failed to investigate and remedy the inaccurate report. [*Id.* ¶¶ 21, 23–24, 40.] However, Plaintiff has not pled an independent cause of action under the FCRA. Instead, Plaintiff alleges Defendant's conduct in violation of the FCRA constitutes a UCL claim. Accordingly, the Court must examine whether the FCRA preempts Plaintiff's theory under the UCL.

In an effort to maintain a uniform set of duties across all furnishers of credit information, Congress included an express preemption clause in the FCRA. *Gorman*, 584 F.3d at 1153; 15 U.S.C. § 1681t(b)(1)(F). Under section 1681t(b)(1)(F) of the FCRA, states cannot impose any requirements or prohibitions on furnishers' duties to report accurately and correct identified discrepancies as set forth in section 1681s–2.[5] The majority of district courts in this Circuit have interpreted section 1681t(b)(1)(F) as a total preemption provision. *Davis v. Md. Bank*, 2002 WL 32713429 *12, 2002 U.S. Dist. LEXIS 26468 *39 (N.D.Cal. June 19, 2002) (finding a majority of district courts have held that the FCRA

preempts both state statutory and common law causes of action). The district courts read the FCRA's preemption clause to preclude all state common law and statutory claims, to effect Congress' intent to limit a plaintiff's recovery against furnishers of credit information to only the remedies provided under the FCRA. *See Howard v. Blue Ridge Bank*, 371 F.Supp.2d 1139, 1144 (N.D.Cal.2005); *Guillen v. Bank of Am. Corp.*, 2011 WL 4071996 *6, 2011 U.S. Dist. LEXIS 98860 *20–21 (N.D.Cal. Aug. 31, 2011). As a result, the FCRA preempts claims brought under California's UCL insofar as they relate to the responsibilities of furnishers of credit information governed by section 1681s–2 of the FCRA. *Mora v. Harley–Davidson Credit Corp.*, 2009 WL 1953433 *5, 2009 U.S. Dist. LEXIS 61851 *14 (E.D.Cal. July 7, 2009); *Janti v. Encore Cap. Grp.*, 2010 WL 3058260 *8, *9–10, 2010 U.S. Dist. LEXIS 78199 *22–23, *26 (S.D.Cal. Aug. 3, 2010).

Here, Plaintiff's allegations against Defendant BAC relate exclusively to the responsibilities of furnishers of credit information as set forth under sections 1681–2(a) and (b). Plaintiff asserts BAC's failure to conduct a reasonable investigation after he notified BAC of the discrepancy, in violation of section 1681s–2(b), constitutes an unlawful business practice prohibited by the UCL. [FAC ¶¶ 84, 86.] However, because the FCRA expressly preempts all state common law and statutory claims regulating the duties of furnishers of credit information, Plaintiff's theory under the UCL is completely preempted. Accordingly, Plaintiff's UCL claim is dismissed with prejudice because amendment would be futile.

---

**5.** Section 1681t(b)(1)(F) of the FCRA provides an exception for claims brought under section 1785.25(a) of the California Consumer Credit Reporting Act. 15 U.S.C. § 1681t(b)(1)(F)(I).

However, as explained below in section II, Plaintiff cannot adequately state a claim under this statute.

## II. CALIFORNIA CONSUMER CREDIT REPORTING ACT

■ In his first cause of action, Plaintiff alleges Defendant BAC violated section 1785.25(a) of the California Consumer Credit Reporting Act ("CCRA") by knowingly furnishing inaccurate information to the national consumer credit reporting agencies. [FAC ¶¶ 50, 52.][6] Defendant argues Plaintiff's CCRA claim should be dismissed because a private plaintiff cannot bring an action against a furnisher of credit information under the Act. [Doc. 12–1 pp. 2–3.] Particularly, Defendant asserts section 1785.31, which allows private plaintiffs to bring an action under the CCRA, does not apply to actions against furnishers of credit information. [*Id.*] The Court agrees.

Generally, section 1782.31 of the CCRA allows private plaintiffs to bring an action for damages suffered as a result of violations of the Act. Cal. Civ.Code § 1785.31. However, section 1785.31 only extends to private plaintiffs bringing CCRA claims against credit reporting agencies and users of information. *Pulver v. Avco Fin. Serv.,* 182 Cal.App.3d 622, 633, 227 Cal.Rptr. 491 (Cal.Ct.App.1986). Private plaintiffs cannot bring CCRA claims against a furnisher of credit information. *Davis,* 2002 WL 32713429 *13, 2002 U.S. Dist. LEXIS 26468 *43 (citing *Pulver,* 182 Cal.App.3d at 633, 227 Cal.Rptr. 491). Here, Plaintiff alleges Defendant BAC is a furnisher of information; Plaintiff makes no allegations that Defendant is a user of information or a credit reporting agency. [FAC ¶ 50.] Thus, section 1785.31 does not authorize Plaintiff to bring a CCRA claim against Defendant. Accordingly, to the extent Plaintiff attempts to bring a CCRA claim against Defendant BAC in its capacity as a furnisher of credit information, he cannot

do so and the claim is dismissed without prejudice.

## III. COMMON LAW TORT CLAIMS

### (A) Negligence

■ In his fourth cause of action for negligence, Plaintiff asserts Defendant BAC breached its duty of care by not finalizing an investigation into Plaintiff's request for credit correction and reporting inaccurate information to the national credit reporting agencies. [FAC ¶¶ 44, 70.] Like the UCL claim, Defendant argues the FCRA preempts Plaintiff's negligence claim and that it should be dismissed because it relates exclusively to the duties set forth under section 1681s–2. [Doc. 12–1, p. 3.] In response, Plaintiff asserts the FCRA does not preempt his claim because he adequately pled "willful intent to injure" as required under section 1681h(e) of the FCRA. [Doc. 17, pp. 5–6.]

Section 1681h(e) exempts certain state tort claims from preemption, if the plaintiff pleads the defendant acted with malice or willful intent to injure. *See* 15 U.S.C. § 1681h(e) (exempting negligence, defamation, and invasion of privacy common law claims). District courts have grappled with defining a workable relationship between sections 1681h(e) and 1681t(b)(1)(F). *See El–Aheidab v. Citibank (South Dakota), N.A.,* 2012 WL 506473 *6, 2012 U.S. Dist. LEXIS 19038 *20–21 (N.D.Cal. Feb. 15, 2012). As explained above in section I(B), the FCRA places certain responsibilities on furnishers of credit information to ensure fair and accurate credit reporting. *Gorman,* 584 F.3d at 1153. Under section 1681t(b)(1)(F), states cannot impose any requirements or prohibitions on the duties of furnishers of credit information as set forth under section 1681s–2. Even the Ninth Circuit has recognized the tension

6. Plaintiff's second and third causes of action for violations of the CCRA are brought against Defendants Experian, TransUnion, and Equifax. [FAC ¶¶ 54, 62.]

between these two provisions. *Gorman,* 584 F.3d at 1165–67. The tension arises because a majority of district courts interpret section 1681t(b)(1)(F) as expressly preempting all state common law and statutory claims against furnishers of information, while section 1681h(e) suggests certain state claims might not be preempted if the plaintiff pleads malice or willful intent to injure. *Id.* at 1165.

In *El–Aheidab,* the District Court for the Northern District of California considered how to reconcile sections 1681h(e) and 1681t(b)(1)(F). The Court finds the rationale in *El–Aheidab* persuasive. The district court concluded section 1681t(b)(1)(F) completely preempts all state law causes of action, despite the exceptions noted in section 1681h(e), for three primary reasons. *El–Aheidab,* 2012 WL 506473 *7–9, 2012 U.S. Dist. LEXIS 19038 *26–30. First, the district court explained that reading section 1681t(b)(1)(F) as a broad preemption clause does not render section 1681h(e) superfluous or inapplicable. *Id.* at *8, 2012 U.S. Dist. LEXIS 19038 at *28. Even though section 1681h(e) preempts a narrow set of state common law tort claims, it does not prevent section 1681t(b)(1)(F) from preempting a broader range of claims. *Id.* at *8, 2012 U.S. Dist. LEXIS 19038 at *29 (citing *Purcell v. Bank of America,* 659 F.3d 622, 625 (7th Cir.2011)). Because section 1681t(b)(1)(F) only preempts state common law and statutory claims against furnishers of credit information with respect to their duties set forth in section 1681s–2, it is not inconsistent with section 1681h(e), which applies against other parties and in other circumstances. *See id.* (holding " § 1681t(b) leaves other provisions of the Act untouched, and such provisions are still subject to § 1681 h(e)'s more limited preemption clause."). Accordingly, the district court in *El–Aheidab* held that a plaintiff cannot sustain a state common law or statutory claim related to the duties set forth

in section 1681s–2, even if a plaintiff alleges a defendant reported false information with malice or willful intent to injure. *See id.* at *8–9, 2012 U.S. Dist. LEXIS 19038 at *28–30.

Second, the district court concluded section 1681t(b)(1)(F) applies to common law negligence claims because under the plain language of the statute—"laws of any state"—literally encompasses state statutory and common law claims. *Id.* at *7–8, 2012 U.S. Dist. LEXIS 19038 at *26 (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (holding "laws of any state" includes not only the laws declared by the legislature, but those determined by the judiciary)). Lastly, the district court reasoned that Congress would not create a comprehensive preemption scheme that was only applicable to state statutory claims, because a plaintiff could dress up a statutory violation as a common law claim even if they involve the same underlying conduct. *El–Aheidab,* 2012 WL 506473 *8, 2012 U.S. Dist. LEXIS 19038 *27.

Applying the rationale in *El–Aheidab,* Plaintiff's negligence claim is preempted by section 1681t(b)(1)(F). BAC negligently reported inaccurate information to the credit reporting agencies and failed to investigate and remedy Plaintiff's request for a credit correction. [FAC ¶¶ 44, 70.] Plaintiff's allegations put his negligence claim within the purview of section 1681s–2, because they clearly involve duties and responsibilities required of furnishers of credit information. 15 U.S.C. § 1681s–2(a) (furnishers must accurately report credit information); *Id.* at § s–2(b) (furnishers must undergo an investigation after receiving notice of inaccurate reporting). Because the wrongful conduct is regulated under section 1681s–2, section 1681t(b)(1)(F) applies to preempt Plaintiff's negligence claim despite his allegations that Defendant acted with the willful

intent to injure. Accordingly, because Plaintiff's negligence claim is preempted, amendment would be futile and this cause of action is dismissed with prejudice.

### (B) Intentional and Negligent Infliction of Emotional Distress

■ Plaintiff alleges claims for intentional and negligent infliction of emotional distress based on BAC's conduct during the course of Plaintiff's contractual relationship with Defendant. [FAC ¶ 76.] As discussed above in section III(A), Plaintiff's state-based emotional distress claims are preempted by the FCRA and subject to dismissal with prejudice, to the extent they are based on BAC's inaccurate reporting and failure to investigate. [FAC ¶ 73.] Moreover, to the extent these claims are based on conduct that would otherwise be actionable, Defendant correctly argues Plaintiff's emotional distress claims are barred by the statute of limitations. [Doc. No. 12–1, p. 5.]

■ In California, intentional and negligent infliction of emotional distress claims have a two-year statute of limitations. Cal. Civ. Proc. § 335.1; *Walker v. Boeing Corp.*, 218 F.Supp.2d 1177, 1183 (C.D.Cal. 2002) (finding California's personal injury one-year (now two) statute of limitations bars plaintiff's negligent and intentional infliction of emotional distress claims because the plaintiff did not file the suit until three years after the conduct complained of had taken place). Here, Plaintiff alleges Defendant falsely accused Plaintiff of making late payments during his contractual relationship with Defendant. [FAC ¶ 76.] Plaintiff's relationship with BAC ended in November 2008 when Plaintiff sold the Property. [*Id.* ¶ 18.] Because Plaintiff did not file this action until September 2011, almost three years after his

contractual relationship ended with Defendant, Plaintiff's emotional distress claims are barred by the two-year statute of limitations.[7] Accordingly, the Court grants Defendant's motion to dismiss and dismisses these claims with prejudice.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss [Doc. No. 12–1], and **ORDERS** as follows:

(i) Plaintiff's first cause of action is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

(ii) Plaintiff's fourth, fifth, sixth, and seventh causes of action are **DISMISSED WITH PREJUDICE** and without leave to amend.

(iii) If Plaintiff wishes to proceed with this action, he must file a second amended complaint that remedies the deficiencies noted above, no later than *April 2, 2012*.

**IT IS SO ORDERED.**

---

7. In his Opposition to Defendant's Motion to Dismiss, Plaintiff provides no indication that he could not have discovered Defendant's conduct earlier, except with respect to the inaccurate credit reporting, which is preempted by the FCRA.