[No. E010952. Fourth Dist., Div. Two. Apr. 21, 1994.]

MICHAEL PARADA, Plaintiff and Appellant, v.
CITY OF COLTON, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

\*This opinion is certified for partial publication pursuant to rules 976(b) and 976.1 of the California Rules of Court, except parts II-A and II-D.

358

**COUNSEL**

Granowitz & White, Bradley R. White and Steven R. Weber for Plaintiff and Appellant.

Best, Best & Krieger, Howard B. Golds and Bernie L. Williamson for Defendant and Respondent.

## OPINION

**TIMLIN, Acting P. J.—**

I

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff and appellant, Michael Parada (Parada), appeals from the dismissal of his second amended complaint after the trial court sustained defendant's and respondent's, City of Colton and Community Development Department of the City of Colton (Colton), demurrer to that complaint without leave to amend.

Parada filed an initial complaint against Colton and Jaime Aguilera (Aguilera) alleging, among other things, tortious wrongful termination of his employment (wrongful discharge) by Colton. Colton and Aguilera demurred to this complaint.

Parada then filed a first amended complaint for wrongful discharge and intentional infliction of emotional distress. Colton and Aguilera demurred to this first amended complaint. The court sustained the demurrer with leave to amend as to the cause of action for wrongful discharge. However, the court sustained the demurrer to the cause of action for intentional infliction of emotional distress without leave to amend.

Parada filed a second amended complaint (complaint) omitting Aguilera as a defendant. Colton demurred to this complaint and filed a motion to strike the portions of the complaint which alleged and requested damages for emotional distress. The court sustained Colton's demurrer without leave to amend and granted the motion to strike without leave to amend. The court then dismissed Parada's action.

The complaint alleged that Parada was employed on April 30, 1990, as an assistant building director for Colton in the community development department until he was discharged on October 30, 1990. On the date of his discharge, Parada was a probationary employee with no available administrative remedies to challenge his discharge. As a deputy building official, Parada's duties were to manage the daily activities of the building inspectors, perform building inspections, and enforce building codes, ordinances

and regulations. Aguilera was the director of the community development department and Parada's immediate supervisor. This department was responsible for approving building permit applications, for overseeing and assuring compliance with building codes, ordinances and regulations pertaining to building and construction within Colton, and for inspecting and discovering any construction being performed in Colton without proper permits.

While employed by Colton, Parada became aware that Colton was engaged in various illegal, unethical and unsafe practices which were in direct contravention of certain public policies of the State of California to protect the health, safety and welfare of the public. These policies were reflected by a state statutory scheme found in certain provisions of the Health and Safety Code regulating building construction in the state, and in uniform codes and ordinances adopted by Colton regulating such construction in Colton for the purpose of advancing and implementing such policies. Parada attempted to rectify such practices.

The complaint further alleged that Parada first became aware of a residential garage conversion to living space being done without a permit by Roy Roman, a member of the Colton Planning Commission. Parada issued a stop-work order regarding such project on or about October 12, 1990, based on the lack of a building permit, nonpayment of school and sewer fees and the project's being in violation of zoning ordinances for that area. Aguilera for improper reasons waived the requirements for Roman's project and issued a building permit for it over Parada's protests. Aguilera's action was an illegal and unsafe practice.

Parada next became aware, on October 25, 1990, of a garage being built without a building permit on Aguilera's property with the assistance of a Colton building inspector, Rene Avila (Avila). This garage was being built in violation of the Colton Municipal Codes and ordinances and was a misdemeanor. (Colton Mun. Code, § 15.04.090.)[1] It is further alleged that this construction was illegal and contrary to the above noted public policies which plaintiff was required, as part of his job responsibilities, to uphold. Parada also discovered that Avila previously had assisted Aguilera in converting, on the same parcel, a garage to an additional room for which a required building permit was not issued.

At the time Parada made this discovery, Aguilera was on vacation. Parada also learned at this time that it was common knowledge in the community development department that Aguilera's garage was being built without a permit and the prior room addition was done without a permit, but the

---

[1] All further references to municipal code sections will be to the Colton Municipal Code.

Colton building inspectors refused to take corrective action for fear of losing their jobs. Parada discussed the matter with building inspector Ernie Hays (Hays) and told Hays he would take care of the problem when Aguilera returned from vacation. Parada said he would talk to Aguilera on October 29, 1990, and insist that Aguilera comply with the codes and apply for a building permit for the garage addition.

Parada held a meeting with the building inspectors, including Avila, on October 29, 1990, and he mentioned the construction occurring in Colton without building permits and he instructed the inspectors to issue stop-work orders on all construction done without permits. Parada also mentioned that he believed that they were aware of "certain persons" (specifically Roman and Aguilera) who were or had been building within the city without permits. During this meeting, Avila left and spoke with Aguilera about Parada's intentions to speak to Aguilera regarding the latter's room addition and to enforce the law regarding that project. Before Parada could speak to Aguilera, Parada was fired by Colton at the instigation of Aguilera.

Parada also alleged that all his activities as an employee of Colton through October 30, 1990, were attempts by him to enforce applicable laws, to implement the public policies of protecting the public health and safety and to rectify ongoing violations of such laws. Such activities were required of him and were within the scope of his job duties and responsibilities.

Parada further alleged that he was fired for "his disclosure of, objections to, refusal to participate in, and/or [his] actions taken . . . to remedy [Colton's] illegal, unethical and/or unsafe practices." The discharge was in retaliation for (1) Parada's enforcement or attempted enforcement of the building codes, ordinances and regulations which were enacted to protect the public health, safety and welfare, and (2) his failure to acquiesce in and to permit and ignore violations of such codes and ordinances. He alleged that his discharge was in contravention of public policy as reflected in the building and construction laws as well as Labor Code section 1102.5 and Government Code section 10541.

Parada filed a timely notice of appeal and contends that the court erred in sustaining the demurrer to the complaint without leave to amend.[2] We agree and reverse the trial court's order of dismissal with direction that it vacate its order sustaining the demurrer and enter a new order overruling it.

---

[2]Parada does not assert on appeal that the trial court erred in granting Colton's motion to strike without leave to amend. Consequently, we do not consider such.

## II

### DISCUSSION

A.  *Parada's Failure to Exhaust Administrative and Judicial Remedies**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

B.  *Standard of Appellate Review*

■ "We proceed to examine the complaint for its legal sufficiency according to the familiar well settled principles. 'A demurrer admits all material and issuable facts properly pleaded. [Citations.] However, it does not admit contentions, deductions or conclusions of fact or law alleged therein. [Citations.]' [Citation.] 'In determining whether or not the complaint is sufficient, as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.] In other words, 'plaintiff need only plead facts showing that he may be entitled to some relief [citation].' [Citation.] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint. [Citation.]" (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].) The complaint's allegations must be liberally construed; however, the essential facts must appear, at least by implication, from the allegations. (*Id.*, at pp. 572-573, fn. 4.)

C.  *The Complaint Alleges Sufficient Facts to State a Cause of Action for Wrongful Discharge Based on the Public Policy Exception*

■ "Labor Code section 2922 provides in relevant part, 'An employment, having no specified term, may be terminated at the will of either party on notice to the other. . . .' This presumption may be superseded by a contract, express or implied, limiting the employer's right to discharge the employee. [Citations.] Absent any contract, however, the employment is 'at will,' and the employee can be fired with or without good cause. But the employer's right to discharge an 'at will' employee is still subject to limits imposed by public policy, since otherwise the threat of discharge could be

*See footnote, *ante*, page 356.

used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal." (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 665 [254 Cal.Rptr. 211, 765 P.2d 373], fns. omitted.) It was recently reiterated in *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1094 [4 Cal.Rptr.2d 874, 824 P.2d 680] that an at-will employee may not be terminated for ". . . a purpose that contravenes fundamental public policy."

■ However, ". . . courts in *wrongful discharge actions* may not declare public policy without a basis in either constitutional or statutory provisions. *A public policy exception carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions strikes the proper balance among the interests of employers, employees and the public. The employer is bound, at a minimum, to know the fundamental public policies of the state and nation as expressed in their constitutions and statutes*; so limited, the public policy exception presents no impediment to employers that operate within the bounds of law. Employees are protected against employer actions that contravene fundamental state policy. And society's interests are served through a more stable job market, in which its most important policies are safeguarded." (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1095, italics added.)

The public policy must involve a subject which affects the public at large rather than a purely personal or proprietary interest of the plaintiff or employer. The policy must also be fundamental, substantial and well established at the time of discharge. (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1090.) It must be a policy "about which reasonable persons can have little disagreement." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 668.)

■ The first public policy which Parada invokes is the promotion of public health, safety and welfare through the regulation of building and construction. As Parada alleged in his complaint, this policy is implemented by a comprehensive legislative scheme governing the construction and alterations of buildings in California. (Health & Saf. Code, § 18901 et seq.)[3] Local agencies[4] are responsible for enforcing the state building standards

---

[3]All further statutory references are to the Health and Safety Code, unless otherwise indicated.

[4] " 'Local agency' means a city, county, and city and county, whether general law or chartered, district agency, authority, board, bureau, department, commission, or other governmental entity of less than statewide jurisdiction. Local agency includes any entity of regional jurisdiction. Local agency does not include an agency of the federal government." (§ 18915.)

pursuant to section 18948.[5] Hence, Colton has enacted by ordinance a set of regulations designed to meet this obligation, which regulations are codified in title 15 of the Colton Municipal Code. Additionally, the Uniform Building Code (UBC) has been adopted by California at title 24, part 2 of the California Code of Regulations (§§ 17922, subd. (a), 18939 [now § 18938, subd. (b)]) and by Colton. (Mun. Code, § 15.04.010.)

The UBC states that its purpose is *to safeguard the public welfare* by regulating and controlling the design, construction, quality of materials, use, occupancy, location and maintenance of buildings and structures within the jurisdiction. (UBC, § 102.) This purpose is echoed in the California statutes and municipal code. (E.g., § 18930, subd. (a)(3); Mun. Code, § 15.04.030.) As provided in section 18941: "All building standards and administrative regulations shall be administered and enforced . . . to preserve and protect the public health and safety."

One of the ways this public policy is accomplished is through the local agency's issuance of building permits. (UBC, §§ 301(a), 303; Mun. Code, § 15.04.030.) UBC section 303 requires a person who wants to alter a building to submit an application for a building permit to a Colton building official in order to enable the official to determine whether the proposed construction or alteration will comply with all the laws relating to such a project, including zoning laws and payment of certain construction associated fees. If construction is commenced without a permit, the building official must conduct a special investigation before the permit may be issued after the fact. (UBC, § 304(e).) A person who constructs or alters a building in Colton without first obtaining a building permit is in violation of the code and commits a misdemeanor. (Mun. Code, § 15.04.090.)

A building official or the building official's duly authorized representative is an officer or other designated authority charged with the administration and enforcement of the code. (UBC, § 403.) The building official is authorized and *directed* to enforce all provisions of the code. For these purposes, the building official has the powers of a law enforcement officer. (UBC, § 202.)

Under the allegations of the complaint, Parada was a building official whose duties were to enforce the building codes, including the permit

---

[5] "'Building standard' means any rule, regulation, order, or other requirement, including any amendment or repeal of that requirement, which specifically regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement, repair, or rehabilitation of a building, structure, factory-built housing, or other improvement to real property, including fixtures therein, and as determined by the commission." (§ 18909, subd. (a).)

requirements, to cause his inspectors to do so and to ensure construction was done in compliance with building codes and regulations. Thus, Parada was authorized to perform the functions of a building official under UBC and did so while employed by Colton. Parada, as a building official, was performing his statutory obligations of enforcing the building codes when he issued the stop work order for Roy Roman's garage conversion, when he instructed the inspectors to require permits for all construction in Colton, and when he expressed his intent to remedy his supervisor Aguilera's construction of a garage without a permit.

In our view, the allegations that Parada was discharged for the performance of a statutory obligation imposed on him, particularly one which was established on the basis of the public policy of protecting the public safety and welfare, is a direct contravention of that policy. (*Gantt* v. *Sentry Insurance*, *supra*, 1 Cal.4th at p. 1090.) In addition, Colton's terminating Parada for his attempts to correct certain Colton officials' noncompliance with the comprehensive laws regulating building and construction gives rise to Parada's wrongful retaliatory discharge cause of action based on breaches of the public policy underlying those laws. *Blom* v. *N.G.K. Spark Plugs (U.S.A.), Inc.* (1992) 3 Cal.App.4th 382, 389 [4 Cal.Rptr.2d 139] held that: "In sum, *Tameny* [v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 (164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R. 4th 314)] and its progeny confirm, implicitly and explicitly, that discharge of an employee in retaliation for resisting employer violations of laws that secure important public policies contravenes those policies, and gives rise to a common law action in tort. (Accord, *Collier* v. *Superior Court* (1991) 228 Cal.App.3d 1117, 1127 [279 Cal.Rptr. 453] . . . .)"

Contrary to Colton's assertions, the public policy implicated here—the protection of the public from unsafe buildings and construction—extends beyond the question of fairness to Parada and Colton. (*Hentzel* v. *Springer Co.* (1992) 138 Cal.App.3d 290, 298 [188 Cal.Rptr. 159, 35 A.L.R.4th 1015].) It affects the safety and welfare of the public at large, including the residents of Colton. Parada's performance of his building official's duties, for which he was allegedly discharged, inured directly to the benefit of the public rather than to Parada and Colton, as his employer. (See *Foley* v. *Interactive Data Corp.*, *supra*, 47 Cal.3d at p. 669.) Moreover, as discussed above, the statutory scheme regulating building construction is detailed, comprehensive and sufficiently describes the type of conduct involved to give an employer, in this case Colton, notice of the fundamental public policy expressed in the law. (*Sequoia Ins. Co.* v. *Superior Court* (1993) 13 Cal.App.4th 1472, 1480 [16 Cal.Rptr.2d 888].)

D. *Other Allegations of Colton's Violation of Public Policies Underlying Specific Statutes*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III

#### DISPOSITION

The order of dismissal is reversed and the case is remanded to the trial court with directions that it vacate its order sustaining the demurrer to the second amended complaint without leave to amend, and that it make a new order overruling the demurrer.

McKinster, J., and Bigelow J.,† concurred.

---

\*See footnote, *ante*, page 356.

†Retired judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.