Filed 3/12/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AFSHEEN ALBORZIAN et al., | B251625 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC482047) |
| v. | |
| JPMORGAN CHASE BANK, N.A. et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elihu M. Berle, Judge. Affirmed in part and reversed in part.

Cohen McKeon, Michael L. Cohen and Heather M. McKeon; Law Offices of Neil R. Anapol, Neil R. Anapol, for Plaintiffs and Appellants.

Arthur D. Levy; Housing and Economic Rights Advocates, Elizabeth S. Letcher and Noah Zinner, and Public Counsel as amici curiae on behalf of Plaintiffs and Appellants.

Arnold & Porter, Peter Obstler, Marjory Gentry and Ginamarie Caya, for Defendant and Respondent JPMorgan Chase Bank, N.A.

Ellis Law Group, Mark E. Ellis and Andrew M. Steinheimer, for Defendant and Respondent Professional Recovery Services, Inc.

\* \* \* \* \* \*

A lender who lends money used to purchase a parcel of property and who holds a junior lien on that property cannot sue the borrower personally for the loan balance if the senior lienholder who also contributed to the purchase of the property forecloses on the property but does not collect enough from the foreclosure sale to pay off the junior lienholder.  (Former Code Civ. Proc., § 580b, enacted by Stats. 1989, ch. 698, § 12.)[1]  Can the borrower sue the junior lienholder for trying to collect the no-longer-enforceable debt if the lienholder's collection efforts inaccurately imply that the debt is still enforceable?  We conclude that the borrower may sue the debt collector under the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.); and may sue the junior lienholder or its debt collector under the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, § 1788 et seq.) and Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.).  However, the borrower may not sue for violations of the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.).  We accordingly affirm in part and reverse in part the trial court's order sustaining the lienholder's and debt collector's demurrers.

FACTUAL AND PROCEDURAL BACKGROUND

Afsheen and Fabiola Alborzian (plaintiffs) took out two loans to purchase their home in 2005, each secured by a deed of trust on the home.  Wells Fargo had the senior lien, and defendant JPMorgan Chase Bank (Chase) had the junior lien.  Wells Fargo subsequently foreclosed on the property, but the proceeds from the sale were not enough to pay off Chase's loan.

About a year after the foreclosure sale, Chase sent a letter to plaintiffs captioned "Opportunity for Assistance."  The letter stated that plaintiffs still "owe[d]" $67,002.04 on their loan, and offered to accept $16,750.56 "as settlement for [their] loan balance."  The letter purported to "offer[] a short 'window of opportunity' to allow [plaintiffs] to resolve [their] delinquency before [their] debt is accelerated," set a deadline beyond

---

[1]     All future statutory references are to the Code of Civil Procedure unless otherwise indicated.

which the offer was "null and void," and warned that delay would leave plaintiffs "fewer options." In its final sentence, the letter disavowed being "an attempt to collect a debt or to impose personal liability" "[t]o the extent [plaintiffs'] obligation was discharged . . ." Chase also sent plaintiffs a second letter. This second letter was captioned "Let's Settle," reaffirmed that $67,002.04 was "currently due," and offered to accept $10,050.34 to "close this debt once and for all" and to "stop" "all calls and efforts to collect the amount owed." During the same time frame as the letters, Chase and defendant Professional Recovery Services, Inc. (PRS) also made debt collection calls to plaintiffs.

In the operative Third Amended Complaint (TAC), plaintiffs sued Chase and PRS (collectively, defendants) on behalf of themselves and a potential class. Plaintiffs alleged that section 580b extinguished Chase's right to enforce its loan against them personally, such that defendants' letters and calls were misleading for implying that the debt was still owed.[2] Plaintiffs claimed that defendants' misrepresentations violated (1) the Rosenthal Act, (2) the UCL, and (3) the CLRA. Plaintiffs also sued PRS for violating the FDCPA and sought a declaration that Chase could not collect on the unenforceable debt.

Chase and PRS demurred, and the trial court sustained their demurrers to the TAC without leave to amend. Plaintiffs timely appealed.

## DISCUSSION

In reviewing an order sustaining a demurrer, we independently evaluate whether the operative complaint states facts sufficient to state a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (*Zelig*).) We must accept as true all facts alleged in the complaint (*ibid.*), except when they are contradicted by exhibits attached to the complaint (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1454, superseded by statute on other grounds by Bus. & Prof. Code, § 7031, subd. (b) (*Holland*)) or matters subject to judicial notice (*Zelig*, at p. 1126). Our concern is with

---

[2] Chase asks us to take judicial notice of a different lawsuit in which amici Housing and Economic Rights Advocates and Public Counsel are participating. We decline to do so because this other litigation is irrelevant.

3

what is alleged, not whether the plaintiffs can adduce evidence to support their allegations. (*Parada v. City of Colton* (1994) 24 Cal.App.4th 356, 362.)

## I.      Actionable misrepresentation involving letters

Chase first argues that it may not be sued for sending its two collection letters. (Although plaintiffs also sue PRS for the letters in its alleged role as Chase's co-conspirator and agent, the letters themselves—which are attached as exhibits to the TAC—come directly and solely from Chase and, without more, are not chargeable to PRS. (*Holland*, *supra*, 86 Cal.App.4th at p. 1447 [facts in exhibits trump allegations in complaint].))[3] All of plaintiffs' letter-based claims, except their request for declaratory relief, turn on whether a junior lienholder's attempts to collect on a foreclosed debt is actionable if the attempts inaccurately imply that the debt is still enforceable.[4]

There is no question that a junior lienholder whose loan is used to purchase a parcel of property and is secured by that property has no legal right to enforce its debt against the borrower personally if the sale price at a foreclosure on that property initiated by any other lienholder who lent money for the purchase price is insufficient to pay off the debt. (Former Code Civ. Proc., § 580b, subd. (a)(2), enacted by Stats. 1989, ch. 698, § 12 ["[N]o deficiency judgment shall lie in any event after a sale of real property . . . under a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . ."] (amended 2013); *In re Prestige Limited Partnership-Concord* (9th Cir. 2000) 234 F.3d 1108, 1117 [due to section 580b, junior lienholder cannot enforce debt after senior lienholder forecloses]; *Brown v. Jensen* (1953) 41 Cal.2d 193, 195-198 [same]; cf. *Roseleaf Corp. v Chierighino* (1963) 59 Cal.2d 35, 41

---

[3]      Plaintiffs asserted for the first time at oral argument on appeal that the telephone numbers contained in the letters were controlled by PRS. This allegation is nowhere in any of the four complaints filed below; it cannot be made for the first time now.

[4]      Chase asserts that we may not consider this question because plaintiffs never argued this theory below. We disagree. This theory was both alleged in the TAC, and specifically rejected by the trial court in its written order.

[§ 580b applies only to purchase money loans].) [5] The lienholder can still seek recourse from other security for the loan or from other guarantors. (E.g. *Armsey v. Channel Associates, Inc.* (1986) 184 Cal.App.3d 833, 837 [recourse against other security]; *Gottschalk v. Draper Companies* (1972) 23 Cal.App.3d 828, 830 [recourse against guarantors].) This bar on personal recovery serves two functions: It protects borrowers from the potential of losing the property and still owing more (which is likely to be the case during the economic downturns when foreclosures are more common); and it protects the real estate market by encouraging lenders to properly value property (because lenders will lose out if they make loans on overvalued property). (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 603; *DeBerard Properties v. Lim* (1999) 20 Cal.4th 659, 663.)

Whether plaintiffs' claims in this case may go forward does not depend upon whether Chase may *enforce* its loan (it may not), but rather on whether Chase may *attempt to collect* on its loan. For loans executed on or after January 1, 2013, the answer is an unequivocal "no" because section 580b was amended in 2013 to prohibit any "collect[ion]" of a legally unenforceable debt. (Stats. 2013, ch. 65, § 2.) [6] However, for loans executed before January 2013 (like plaintiffs' loans), the lienholder is not absolutely barred from trying to get a borrower to pay off the loan balance voluntarily; the lienholder nevertheless remains liable for any other law it violates in the course of doing so.

---

**5**     Plaintiffs alternatively cite section 580d for the proposition that Chase's loan was unenforceable against them personally, but that section bars deficiency judgments only when there is a single loan or when multiple loans are made by the same lender. (*Cadlerock Joint Venture, L.P. v. Lobel* (2012) 206 Cal.App.4th 1531, 1536.) This case is accordingly outside of section 580d's ambit.

**6**     We grant plaintiffs' request to take judicial notice of the legislative history of section 580b. (Evid. Code, § 452, subd. (c).)

As it turns out, the viability of most of plaintiffs' letter-based claims against Chase (other than the CLRA and declaratory relief claims) boils down to whether plaintiffs can state a claim under the FDCPA. That is because the Rosenthal Act, among other things, explicitly incorporates the FDCPA's standards.[7] (Civ. Code, § 1788.17.) So does the UCL, which "'"'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.'" (*Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 644 (*Puentes*), quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180; Bus. & Prof. Code, § 17200.)[8]

The FDCPA generally prohibits a "debt collector" from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt" (15 U.S.C. § 1692e), and as is pertinent here, specifically prohibits "[t]he false representation of . . . the character, amount or legal status of any debt" (§ 1692e, subd. (2)(A)), "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken" (§ 1692e, subd. (5)), and "[t]he use of any . . . deceptive means to collect or attempt to collect any debt . . ." (§ 1692e, subd. (10)). While the federal courts may be divided on whether efforts to collect an unenforceable debt violate the FDCPA if unaccompanied by a threat of litigation (compare *McMahon v. LVNV Funding, LLC* (7th Cir. 2014) 744 F.3d 1010, 1020-21 (*McMahon*) [no threat of litigation required] with *Huertas v. Galaxy Asset Management* (3d Cir. 2011) 641 F.3d 28, 32-33 [threat of litigation required]; *Freyermuth v. Credit Bureau Services, Inc.* (8th Cir. 2001) 248 F.3d

---

[7] The Rosenthal Act does not incorporate the FDCPA's applicability only to "debt collector[s]," so the Rosenthal Act applies to Chase whether or not it qualifies as a "debt collector" under the FDCPA.

[8] The UCL also covers "fraudulent" and "unfair" business practices (Bus. & Prof. Code, § 17200; *Puentes*, *supra*, 160 Cal.App.4th at p. 644), but we need not reach these other two prongs in light of our conclusion regarding the unlawfulness prong.

767, 771 [same]), the courts are in agreement that *deceptive* collection efforts violating the FDCPA are actionable.

Whether a debt collection effort entails false representations, threats, or deception is judged objectively from the perspective of the "'least sophisticated debtor.'" (*Gonzales v. Arrow Fin. Servs., LLC* (9th Cir. 2011) 660 F.3d 1055, 1061-1062 (*Gonzales*); accord, *McMahon*, *supra*, 744 F.3d at p. 1019.) This unsavvy consumer is charged with a "'basic level of understanding and willingness to read with care,' [citation]" but is of "'below average sophistication or intelligence,'" and is "'uninformed or naive.'" (*Gonzales*, at p. 1062.) He or she is "under no obligation to seek explanation of conflicting or misleading language in debt collection letters." (*Ibid.*) To this consumer, "'[a] debt collection letter'"—a so-called "dunning letter"—"'is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" (*Ibid.*, quoting *Brown v. Card Serv. Ctr.*(3d Cir. 2006) 464 F.3d 450, 455.) In this regard, what is implied is just as important as what is stated. (E.g., *Turner v. J.V.D.B. & Assocs.* (7th Cir. 2006) 202 Fed.Appx. 123, 125; *Gully v. Van Ru Credit Corp.* (N.D. Ill. 2005) 381 F.Supp.2d 766, 773.)

Plaintiffs have sufficiently alleged that the dunning letters sent by Chase are actionable under the FDCPA. The letters offer to "settle" a "debt" plaintiffs "owe" by giving them two short "'window[s] of opportunity'" that, if missed, leave them with "fewer options" and subject them to "accelerat[ion]" of the loan and continued "calls and efforts to collect the amount owed." The unspoken but unmistakable premise of these letters is that plaintiffs' debt is still valid, due, and owing—in a word, enforceable.

To be sure, the last sentence of Chase's first letter tries to create some "wiggle room" by stating that the letter "does not constitute an attempt to collect a debt or to impose personal liability for such obligation" "[t]o the extent [the recipient's] original obligation was discharged" and by inviting the recipient to seek the advice of counsel. But this language does not negate the otherwise clear implication of the letters that the debt is enforceable because the recipient would have no idea that his or her "original obligation was discharged" unless he or she happened to be familiar with section 580b.

7

Few savvy consumers have such mastery of the Code of Civil Procedure, to say nothing of their less savvy cousins. The letters are, at best, ambiguous. Chase could have eliminated this ambiguity by disclosing that its debt was no longer enforceable against the letter's recipient and that Chase was merely seeking voluntary repayment of its unenforceable debt. But such a disclosure would have substantially undermined the likely effectiveness of Chase's collection efforts. "When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its own peril." (*Gonzales*, *supra*, 660 F.3d at p. 1063.) Chase walked this perilous path, and plaintiffs have accordingly alleged enough of a misrepresentation or deception to get past a demurrer on an FDCPA claim, and hence their UCL and Rosenthal Act claims as well.

## II. Actionable telephone calls

Chase and PRS also argue that the debt collection calls plaintiffs alleged they made are not actionable. Although the TAC does not allege that defendants' calls were ever answered and accordingly does not allege what was said, it does allege that they were intentionally made "in a campaign of harassment." The making of frequent calls itself can constitute actionable harassment under the Rosenthal Act (Civ. Code, § 1788.11, subd. (e); *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 345 [repeated unanswered calls; sufficient to state a claim]) and the FDCPA (15 U.S.C. § 1692d, subd. (5) [harassing calls "with intent to annoy, abuse or harass" are actionable]; *Green v. Creditor Iustus Remedium* (E.D. Cal. Nov. 12, 2013, No. 1:13-cv-01414-LJO-JLT) 2013 U.S.Dist. Lexis 161298, 9 [repeated unanswered calls; sufficient to state a claim]), and thus is "unlawful" under the UCL (Bus. & Prof. Code, § 17200).

## III. Remaining arguments

Chase and PRS make a number of further arguments as to why plaintiffs' claims were properly dismissed.

### A.    Standing

Defendants argue that plaintiffs lack standing to assert a claim under the UCL because they never made any payments on their loan and were consequently unharmed. Plaintiffs may invoke the UCL only if they suffer (1) economic loss (that is, "a loss or deprivation of money or property"), (2) caused by the unlawful business practice. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322; Bus. & Prof. Code, § 17204.)  Plaintiffs allege two economic harms: (1) a diminished credit score caused by Chase "report[ing] false negative information to credit agencies"; and (2) the $200 plaintiffs paid an attorney to respond to Chase's first letter.  "'[P]erpetration of [c]redit [r]eports containing inaccurate erroneous information regarding "due and owing" debts is a sufficient injury to grant [p]laintiffs standing' under the UCL." (*Rex v. Chase Home Fin. LLC* (C.D. Cal. 2012) 905 F.Supp.2d 1111, 1147 (*Rex*), quoting *White v. Trans Union, LLC* (C.D. Cal. 2006) 462 F.Supp.2d 1079, 1080, 1084; accord, *Rubio v. Capital One Bank* (9th Cir. 2010) 613 F.3d 1195, 1204.)  Thus, whether or not plaintiffs can eventually prove that Chase was making false credit reports while trying to collect on its loan, plaintiffs' allegation that Chase has done so is enough to confer standing under the UCL at this stage of litigation.[9]  (Cf. *Wright v. GMAC* (S.D. Cal., January 25, 2012, No. 09cv2666 JM AJB) 2012 U.S. Dist. Lexis 8977, 12-13 [granting summary judgment because evidence did not establish causal link between credit reporting and damages].)

### B.    Preemption

Defendants next contend that plaintiffs' state law claims are preempted by the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.)  The FCRA generally regulates the credit reporting industry (§ 1681, subd. (b)), and as pertinent to this case, the means by which persons and companies furnish information to credit reporting agencies (§ 1681s-2.)  To assure uniformity, the FCRA preempts state laws that impose "a

---

[9]    We accordingly have no need to address the payment of attorney's fees as an alternative basis for standing.

requirement or prohibition . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies." (§ 1681t, subd. (b)(1)(F).)

Plaintiffs allege that defendants furnished false information to credit reporting agencies regarding the unenforceable debt, which thereby injured plaintiffs. These allegations do not implicate the FCRA's preemption clause. Although a FDCPA claim based solely on allegations of false credit reporting may be preempted by the FCRA (*Miller v. Bank of America, N.A.* (S.D. Cal. 2012) 858 F.Supp.2d 1118, 1124), plaintiffs' claims are grounded in defendants' deceptive efforts to collect Chase's loan; plaintiffs' allegations of false credit reporting go solely to the injury they claim to have suffered in order to confer standing. In such cases, there is no preemption. (*Rex*, *supra*, 905 F.Supp.2d at pp. 1151-1154.)

### C.    CLRA

Defendants next allege that plaintiffs cannot sue them for violating the CLRA because their debt collection efforts do not involve "goods or services." The CLRA prohibits "unfair methods of competition and unfair or receptive acts or practices." This includes the inaccurate "represent[ation] that a transaction confers or involves rights, remedies, or obligations which it does not have or involve . . ." (Civ. Code, § 1770, subd. (a)(14).) However, this proscription only applies with respect to "transaction[s] intended to result or which result[] in the sale or lease of goods or services to [a] consumer . . ." (§ 1170, subd. (a)) The CLRA defines "goods" as "tangible chattels bought or leased for use primarily for personal, family or household purposes" (§ 1761, subd. (a)), and "services" as "work, labor, and services other than a commercial or business use, including services furnished in connection with the sale or repair of goods" (§ 1761, subd. (b)).

Chase loaned plaintiffs money. A mortgage loan is not a "good" because it is not a "tangible chattel;" it is not a "service" because it is not "work, labor, or services . . . furnished in connection with the sale or repair of goods." For some time, courts applying California law divided over whether a lender's provision of other, so-called "ancillary services" (such as a providing insurance advice) could convert a non-"service" into a

10

"service."  (Compare *Berry v. American Express Publishing, Inc.* (2007) 147 Cal.App.4th 224, 231 [CLRA does not apply to lender] with *Hernandez v. Hilltop Fin. Mortg., Inc.* (N.D. Cal. 2007) 622 F.Supp.2d 842, 849-851 [CLRA applies to mortgage lenders because lender offered ancillary services attendant to loan].)  Our Supreme Court in *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 65 seemingly resolved this split by holding that an insurer who sold life insurance along with ancillary services was not covered by the CLRA.  *Fairbanks* applies with equal force to lenders.  (E.g., *Sonada v. Amerisave Mortg. Corp.* (N.D. Cal. July 8, 2011, No. C-11-1803 EMC) 2011 U.S.Dist. Lexis 73940, 4-6; but see *Rex*, *supra*, 905 F.Supp.2d at pp. 1155-1157.)

### D.     *Declaratory relief*

Chase lastly argues that plaintiffs have not alleged a valid declaratory relief claim because there is no actual controversy to resolve in light of Chase's concession that section 580b renders its loan judicially unenforceable.  A plaintiff may seek a judicial "declaration of his or her rights or duties with respect to another . . . in cases of actual controversy relating to the legal rights and duties of the respective parties."  (§ 1060.) Plaintiffs are seeking a declaration regarding Chase's right to "*collect[]* [its] loan"—not Chase's right to *judicially enforce* that loan.  Chase's concession as to the latter does not obviate the controversy as to the former.  The trial court accordingly erred, and thus abused its discretion, in sustaining the demurrer to this remedy as the cause of action was legally sufficient. (See *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647 [abuse of discretion review for dismissal of declaratory relief action].)

11

## DISPOSITION

We accordingly affirm the trial court's dismissal of plaintiffs' CLRA claim, but reverse and remand for further proceedings with respect to plaintiffs' FDCPA, Rosenthal Act, and UCL claims and on plaintiffs' prayer for declaratory relief.  Each party is to bear its own costs on appeal.

**<u>CERTIFIED FOR PUBLICATION.</u>**

_____, J.
HOFFSTADT

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST