Filed 9/29/16  Rucker v. Bank of America CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHELE F. RUCKER, | B266355 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County<br>Super. Ct. No. PC055147) |
| BANK OF AMERICA, N.A. et al., | |
| Defendants and Respondents. | |

APPEAL from an order and judgment of the Superior Court of Los Angeles County.  Stephen P. Pfahler, Judge.  Affirmed.

Daniel B. Spitzer for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Jon D. Ives and Kerry W. Franich for Defendants and Respondents.

\* \* \* \* \*

A trustee on a deed of trust foreclosed on a home just days after the loan servicer assured the defaulted homeowner that no foreclosure would happen while the servicer evaluated the homeowner's 16th application for a loan modification. Once the error came to light, the trustee rescinded the foreclosure sale. The homeowner nevertheless sued the loan servicer, the trustee, and the prior owner of the loan. The trial court dismissed the lawsuit because the homeowner suffered no damage. We conclude this was correct, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Because we are reviewing the trial court's dismissal of a complaint on demurrer, we draw the following facts from the allegations set forth in the operative complaints and from judicially noticed documents, resolving any conflicts in favor of the judicially noticed documents. (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34 (*Alborzian*); *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 210.)

In 2004, plaintiff Michele Rucker (plaintiff) and her brother borrowed $725,000 from Countywide Home Loans, Inc. (Countrywide). The loan was secured by a deed of trust on a Chatsworth home jointly owned by plaintiff and her brother. In 2005, plaintiff's brother ceded his interest in the property to plaintiff. By 2007, plaintiff had defaulted on the loan, and defendant ReconTrust Company, N.A. (ReconTrust), recorded a notice of default on the property. At some point thereafter, defendant Bank of America, N.A. (Bank of America) began servicing the loan.

Between 2007 and 2013, plaintiff remained in the home and submitted 15 applications to Bank of America to modify the terms of her loan. In June 2013, while plaintiff's 15th loan modification application was pending, defendant Nationstar Mortgage LLC (Nationstar) began servicing her loan. By that time, ReconTrust had formally substituted in as trustee on the deed of trust, and Bank of New York Mellon

2

(Bank of New York)[1] had become the beneficiary on the deed of trust. Throughout June 2013, Nationstar representatives told plaintiff that her file was not yet accessible for them to work on. In mid-June 2013, ReconTrust recorded a notice of trustee's sale and set July 8, 2013 as the date the property would be foreclosed upon and auctioned for sale. Soon thereafter, plaintiff's husband spoke to Bank of America, which assured him that no one would foreclose on the property while Nationstar was considering a loan modification application. On July 13, 2013, Nationstar wrote plaintiff a letter requesting that she submit a 16th loan modification application; the letter promised that "no foreclosure sale will be conducted and you will not lose your home during the . . . evaluation."

Notwithstanding Nationstar's and Bank of America's assurances, ReconTrust went forward with the foreclosure sale on July 18, 2013, and sold the house to Bank of New York. ReconTrust recorded a trustee's deed upon sale on August 20, 2013.

## II. Procedural History

### A. Plaintiff's lawsuit and temporary restraining order (TRO)

Two days after ReconTrust recorded the trustee's deed upon sale, plaintiff sued Bank of America, ReconTrust and Nationstar (collectively, defendants) and sought a TRO to enjoin any further transfer of the property. On September 5, 2013, the trial court granted a TRO enjoining Nationwide and Bank of New York from transferring title of the property or from evicting plaintiff.[2]

### B. Rescission

Eight days later, on September 13, 2013, ReconTrust and Bank of New York rescinded the trustee's deed upon sale by filing a notice of rescission (1) stating that the foreclosure sale had been conducted in error, (2) placing title to the property back in

---

1 Bank of New York was formerly known as the Bank of New York as successor to JP Morgan Chase Bank, N.A., as Trustee for Holders of Structured Asset Mortgage Investments II Trust 2004-AR5, Mort Pass-Thru Certs, Series 2004-AR5.

2 We take judicial notice of plaintiff's TRO application and the court's TRO, neither of which was included in the Clerk's Transcript.

3

plaintiff's name, and (3) declaring that the rescission "return[ed] the priority and existence of all title and lienholders to the status quo as existed prior to the trustee's sale."

### C. Disposition of plaintiff's claims

Plaintiff filed a first amended complaint (FAC) asserting claims for: (1) violations of the Homeowner Bill of Rights (HBOR) (Civ. Code, § 2920.5 et seq.) and violations of the 2012 federal Consent Judgment (Consent Judgment) between the United States and Bank of America; (2) violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.); (3) intentional infliction of emotional distress; (4) promissory estoppel; and (5) negligence.[3] The trial court sustained defendants' demurrer to the FAC in its entirety. As to the Unfair Competition Law claim, the court granted leave to amend; as to the remaining claims, it denied leave to amend.

Plaintiff filed a second amended complaint (SAC) re-alleging that defendants had violated the Unfair Competition Law by (1) violating the HBOR's prohibition on "dual tracking"—that is, foreclosing on a deed of trust in the midst of considering a loan modification (Civ. Code, § 2923.6), (2) violating the HBOR's requirement to provide a single point of contact with the loan servicer (Civ. Code, § 2923.7), and (3) violating the Consent Judgment. Defendants again demurred, and the trial court sustained the demurrer without leave to amend because plaintiff "ha[d] not lost any money or property as a result of [defendants'] purported unfair activity."

After the trial court entered judgments of dismissal, plaintiff filed this timely appeal.

### DISCUSSION

Plaintiff argues that the trial court erred in dismissing her HBOR and Unfair Competition Law claims and argues that she can amend her complaint to state valid

---

[3] Plaintiff filed the FAC after defendants demurred to the original complaint, but before the trial court could rule on it.

4

claims under these statutes as well as a valid negligence claim. We independently review a trial court's order sustaining a demurrer, accepting all properly pled facts as true and asking whether the operative complaint states facts sufficient to state a cause of action. (*Alborzian*, *supra*, 235 Cal.App.4th at p. 34.) In assessing whether a trial court abused its discretion in denying leave to amend, we ask whether there is a "reasonable probability" that the operative complaint could have been amended to cure the defect. (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 163.) We must consider new theories advanced for the first time on appeal. (Code Civ. Proc., § 472c, subd. (a).)

## I.     Sustaining the Demurrer

### A.     HBOR and Consent Judgment claim

#### 1.     HBOR

The HBOR does not require lenders to grant defaulting borrowers a loan modification, but requires lenders to give those borrowers "a meaningful opportunity to obtain . . . available loss mitigation options, if any, offered through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (Civ. Code, § 2923.4, subd. (a); *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272; *Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1056.) To secure this opportunity, and as pertinent here, the HBOR (1) prohibits "dual tracking," which, as noted above, is "when a bank forecloses on a loan while negotiating with the borrower to avoid foreclosure" (*Valbuena*, at p. 1272; Civ. Code, § 2923.6, subd. (c)), and (2) requires a loan servicer to provide a "single point of contact" for communicating with a borrower who seeks to avoid foreclosure, at least if the borrower so requests (Civ. Code, § 2923.7, subd. (a)). As to these two protections, the HBOR empowers a plaintiff to seek two forms of relief: (1) injunctive relief "to enjoin a material violation"; and/or (2) "actual economic damages" arising from a "material violation," with treble or statutory damages of $50,000 if the violations are intentional, reckless or willful. (Civ. Code, § 2924.12, subds. (a)(1) & (b).)

The trial court correctly concluded that plaintiff did not, in the FAC, state a claim under the HBOR because she could not establish her entitlement to either type of relief available under the HBOR.

Plaintiff is not entitled to an injunction. Injunctive relief is prospective. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 418; *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1403, fn. 6.) Because defendants had already rescinded the wrongful foreclosure, there was nothing left to enjoin. Plaintiff suggests that she could still obtain further injunctive relief because the notice of rescission filed by ReconTrust and Bank of New York only returned the title "to the status quo as existed prior to the trustee's sale"; because the notice of default remains intact, plaintiff argues, injunctive relief remains available to remove the notice of default. We disagree. The HBOR violations plaintiff alleges deal with defendants' wrongful foreclosure; they have nothing to do with the notice of default entered six years earlier. The notice of default is still valid because plaintiff is still in default on her loan.

Plaintiff has also not sustained any "actual economic damages" by virtue of defendants' alleged violations of the HBOR because defendants rescinded the erroneous foreclosure within 60 days of the sale and within 30 days of recording the trustee's deed upon sale, and plaintiff has not alleged any injury justifying compensable damages during that window. To be sure, plaintiff alleged that she incurred costs making letter-sized copies of 45 photos of fire-related damage to her property in 2008 as part of some of her loan modification applications. But those costs have nothing to do with the 2013 foreclosure and are, in any event, too "de minimis" to constitute cognizable damage. (E.g., *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 79 (*Lueras*) ["[t]ime and effort spent assembling materials for an application to modify a loan is the sort of nominal damage subject to the maxim *de minimis non curat lex*—i.e., the law does not concern itself with trifles"]; see Civ. Code, § 3533 ["[t]he law disregards trifles"].) At oral argument, plaintiff suggested damages are automatically established whenever an HBOR violation is not "corrected and remedied" prior to the time the trustee's deed upon sale is recorded; for support, she cites Civil Code section 2924.12, subdivision (b). She is

6

wrong. All that provision does is empower a plaintiff in those circumstances to recover any "actual economic damages" she suffers; as we have explained above, plaintiff here suffered no such damages.

### 2. Consent Judgment

Plaintiff's related claim that Bank of America violated the federal Consent Judgment fails for the same reason: She sustained no damage. Further, because the Judgment is between the United States and Bank of America, plaintiff "has no standing to enforce the consent judgment." (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 615.)

### B. Unfair Competition Law claim

The Unfair Competition Law prohibits any business practice that is (1) unlawful, (2) unfair, or (3) fraudulent. (Bus. & Prof. Code, § 17200; *Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1302-1303.) However, lawsuits for violations of the Unfair Competition Law may only be brought by persons who have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) This threshold standing requirement is only met if the plaintiff shows (1) "a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury," and (2) "that [the] economic injury was the result of, i.e., caused by, the unfair business practice . . . that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322; *Sarun v. Dignity Health* (2014) 232 Cal.App.4th 1159, 1166-1167.) The requisite injury-in-fact is not onerous (*Kwikset*, at p. 324 ["'Injury-in-fact is not Mount Everest'"]), but it must entail some "appreciable" economic injury (*Sarun*, at p. 1168, fn. 6). Akin to the HBOR, there are two types of relief available under the Unfair Competition Law: (1) injunctive relief; and (2) "'restitution "'as may be necessary to restore . . . any money or property . . . which may have been acquired by means of such unfair competition.'"'" (*Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1012-1013; Bus. & Prof. Code, § 17203.)

For the same reasons plaintiff lacks standing to bring a claim under the HBOR, she lacks standing to bring a claim under the Unfair Competition Law: There is no

longer any injunctive relief to be had, and the money she spent to copy photos for her loan modification applications is unrelated to the alleged Unfair Competition Law violations and is de minimis as a matter of law.[4] (*Lueras*, *supra*, 221 Cal.App.4th at p. 79.)

## II.     Possibility of Amendment

On appeal, plaintiff suggests three ways in which she believes she can amend her complaint to state claims for violations of the HBOR, for violations of the Unfair Competition Law, and for negligence.

### A.     *Attorney's fees as damages*

Plaintiff argues that defendants caused her to incur attorney's fees because they only rescinded the wrongful foreclosure sale *after* she filed suit and obtained the TRO, and that those fees constitute compensable damages and an injury-in-fact sufficient to state a claim under the HBOR and the Unfair Competition Law.  She is wrong.

Under the general, so-called "American rule," each party to a lawsuit is expected to pay for its own attorney; attorney's fees incurred in bringing a lawsuit are not recoverable in the absence of an exception.  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 805; *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817-818; Code Civ. Proc., § 1021.)  One exception is where a statute entitles the prevailing party to obtain its attorney's fees from the losing party; in such cases "awards of attorney's fees are expressly defined as costs, not damages." (*Elton v. Anheuser-Busch Beverage Group, Inc.* (1996) 50 Cal.App.4th 1301, 1308; Code Civ. Proc., § 1033.5, subd. (a)(10)(B).)  Another exception is where a putative plaintiff is forced to sue a third party to mitigate the harm from the putative defendant's tort; in such cases, the plaintiff may recover, as damages, the attorney's fees incurred in litigating "the tort of another" (that is, the tort committed by the defendant).  (*Mega RV Corp. v. HWH Corp.* (2014) 225 Cal.App.4th

---

[4]     Because plaintiff's HBOR and Consent Judgment claim, as well as her Unfair Competition Law claim, are subject to dismissal for these reasons, we need not reach the alternative bases for dismissal argued by the parties on appeal.

1318, 1337-1338; *Prentice v. North American Title Guaranty Corp.* (1963) 59 Cal.2d 618, 620; *David v. Hermann* (2005) 129 Cal.App.4th 672, 688.)  And a further exception allows a plaintiff to recover, as damages, the attorney's fees incurred prior to suing the defendant in a narrow universe of specified types of cases—namely, (1) in a bad faith denial of insurance claim, the attorney's fees incurred by the insured trying to overcome the wrongful, bad faith denial of its rights under the insurance contract (*Brandt*, at p. 817); (2) in malicious prosecution, false arrest, and slander of title cases, the attorney's fees incurred by the plaintiff in defending against the wrongful, prior action (*Cassim*, at p. 806; *Nelson v. Kellogg* (1912) 162 Cal. 621, 623-624; *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 59; *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1032-1033); and (3) in class action claims under the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.), the attorney's fees incurred by the plaintiff prior to litigation to obtain relief for the plaintiff when other class members have yet to obtain that relief (*Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 592-593, overruled in part by *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 641-643 [discussing *Kagan* on this point]).

Under this precedent, plaintiff is not entitled to claim the attorney's fees she incurred in filing this lawsuit and obtaining a TRO as damages.  That is because none of the exceptions to the American rule applies here.  The HBOR certainly contains a provision entitling a prevailing party to obtain its attorney's fees (Civ. Code, § 2924.12, subd. (i)), but those fees, as noted above, are not "damages."  And even if we assume that a plaintiff can be a "prevailing party" if she wins temporary injunctive relief but ultimately loses the lawsuit, plaintiff in this case never invoked this provision or otherwise made a motion to recover her TRO-related fees.  Plaintiff is also not seeking the attorney's fees she incurred in trying to right the tort *of another*, and this lawsuit does not fall into any of the previously defined categories where a plaintiff may recover attorney's fees incurred in litigating against the defendant.  Consequently, none of the exceptions allowing for recovery of attorney's fees as damages applies here.

Despite the absence of any precedential support, plaintiff nevertheless urges that the attorney's fees she incurred in filing suit and obtaining preliminary injunctive relief in this very case can constitute damages that give her standing to file suit. We reject this argument for two reasons. First and foremost, it is circular. "I have standing to bring my lawsuit," plaintiff's argument goes, "because I incurred attorney's fees in bringing the lawsuit." Second, because this argument could be made in every single case, accepting this argument means that *every* plaintiff would automatically incur damages and would always have standing under the Unfair Competition Law. This would create an exception that would swallow the American rule and would nullify the standing requirement in the Unfair Competition Law. Not surprisingly, other courts have rejected this precise argument. (E.g., *Cordon v. Wachovia Mortg., a Div. of Wells Fargo* (N.D.Cal. 2011) 776 F.Supp.2d 1029, 1039 ["Plaintiff fails to cite any authority establishing that attorney's fees incurred in bringing a UCL claim are sufficient to confer standing under § 17204. Under Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit."]; *Serna v. Bank of Am., N.A.* (C.D.Cal. June 4, 2012, No. CV 11-10598 CAS (JEMx)) 2012 U.S.Dist. Lexis 77995 at pp. 14-15; *Berkeley v. Wells Fargo Bank* (N.D.Cal. Oct. 19, 2015, No. 15-cv-000749-JSC) 2015 U.S.Dist. Lexis 141947 at p. 47.)

### B.    *Outstanding obligation*

Citing *Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, plaintiff next argues that the existence of plaintiff's outstanding, enforceable debt is sufficient to confer standing. Again, she is wrong. In *Hale*, the court held that a plaintiff who had only paid $500 on an outstanding $14,447.65 medical bill had standing to bring a claim under the Unfair Competition Law where she alleged that the bill itself was unlawful and where the balance of the bill remained outstanding. (*Id.* at pp. 1383-1384.) Here, by contrast, the only wrongful act was the foreclosure sale, and it was rescinded. Although plaintiff still has an outstanding obligation to pay the underlying loan she took out in 2004, she does not allege that the loan itself was wrongful.

10

## C. *Further arguments for amendment*

Plaintiff suggests a number of further amendments she can make, but none cure the deficiencies outlined above.  In response to defendants' argument that plaintiff never requested a single point of contact and that such a request is required under the HBOR before the duty to name a single contact arises (Civ. Code, § 2923.7, subd. (a)), plaintiff argues that she can so allege.  But this additional allegation does not cure the absence of any damages.  We further observe that plaintiff also cannot allege a claim for treble or statutory damages under the HBOR because she incurred no *actual* damages and because defendants' quick and complete rescission of the wrongful foreclosure sale does not qualify as an intentional, reckless, or willful "material" violation.  (Civ. Code, § 2924.12, subd. (b).)  Plaintiff also contends that she can resuscitate her negligence claim by alleging a different theory of duty and breach.  But a negligence claim also requires an allegation of damages (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821), which is lacking for the reasons noted above.

## DISPOSITION

We affirm the order of dismissal.  Defendants are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.</u>

_____, J.

HOFFSTADT

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

11