Filed 7/24/15  Fidelman v. JP Morgan Chase CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| DEBORAH BECK FIDELMAN, | B256068 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. PC054891) |
| JP MORGAN CHASE, N.A., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Rodriguez Law Group, Patricia Rodriguez and George M. Hill for Plaintiff and Appellant.

Parker Ibrahim & Berg, John M. Sorich, and Chanel L. Oldham for Defendants and Respondents.

_____

Plaintiff Deborah Beck Fidelman appeals from a judgment of dismissal after a demurrer to her first amended complaint (FAC) by Defendants JP Morgan Chase Bank, N.A. (Chase) and California Reconveyance Corporation (CRC), was sustained without leave to amend. Finding no error, we affirm the judgment.[1]

## FACTUAL AND PROCEDURAL SUMMARY

In an appeal arising from the sustaining of a demurrer, we accept as true the material allegations of the complaint. (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 401.) The facts as alleged in the FAC, the operative pleading, are summarized as follows.

In 2009, plaintiff began to experience financial difficulties and fell behind on her mortgage payments. On May 20, 2009, a notice of default was filed on plaintiff's loan. Plaintiff contacted Chase to inquire about her options, and Chase provided her with loan modification documents. She submitted the completed loan modification application in July 2009, and contacted Chase on at least five occasions to confirm receipt, but did not receive a response.

On or about September 8, 2009, Chase requested supplemental documents from plaintiff to determine whether she qualified for the "HOME NOW loss mitigation program." Plaintiff submitted the supplemental documents on October 2, 2009. Six days later, Chase sent plaintiff a notice stating that her modification trial program was "at risk" and that she must submit her trial payments immediately. Plaintiff responded with a letter explaining that she had not heard from Chase regarding the loan modification program or the HOME NOW loss mitigation program.

On or about March 7, 2010, a notice of trustee sale was posted to plaintiff's front door. Plaintiff retained counsel and contacted Chase again to inquire about the status of

---

[1] The record, which we discuss in this summary, reflects troubling allegations about Chase's handling of plaintiff's mortgage and foreclosure of her home. Plaintiff claims, and Chase does not deny, that Chase repeatedly asked for duplicate information to qualify for a loan modification program, was unresponsive to plaintiff's inquiries about her eligibility for loan modification, and proceeded to hold a foreclosure sale, only to rescind it later and acknowledge the sale was due to its "inadvertence and oversight."

her loan modification applications. A Chase representative informed plaintiff that her account had been closed and transferred to the loss mitigation department. Upon contacting that department, plaintiff was informed that her loan modification application had been denied on February 13, 2010, and that foreclosure of her property was on hold. On April 29, 2010, however, a representative from Chase called plaintiff to inform her that her loan modification application was being processed, and that plaintiff would be placed on a three month trial modification plan. On May 24, 2010, plaintiff received another phone call from Chase informing her that her modification file was under review.

Chase requested modification documents from plaintiff once more on July 27, 2010, which plaintiff submitted on August 1, 2010. Because she did not receive a response to her document submission, plaintiff resubmitted the requested documents on October 5, 2010, October 20, 2010, and October 22, 2010. On or about December 8, 2010, plaintiff received a letter from Chase informing her that her trial period had expired. Plaintiff followed up by faxing a letter to Chase to inquire into "what needed to be done to make sure she was being reviewed in good faith."

In June 2011, Chase notified plaintiff that she had been approved for another "Trial Modification Plan" which required her to make three consecutive monthly payments beginning in August 2011. Plaintiff mailed in two payments, but was notified on September 26, 2011 that Chase was cancelling the plan because it had not received any payments from her. Plaintiff remained in contact with Chase and was able to postpone a foreclosure sale scheduled for November 2011. After discussing the matter with another Chase representative in January 2012 and being informed that a foreclosure sale was scheduled for March 2, 2012, plaintiff was provided with another modification request packet. She submitted the application on February 29, 2012.

On March 2, 2012, plaintiff found a "Notice of Endeavor for Eviction Action" and "Foreclosure Notice to Vacate" posted on her front door. She contacted Chase. A representative stated "the only explanation he could think of was that there was a disconnect between the modification department and the foreclosure department." Plaintiff was informed that her house already had been sold to Canterbury Lots. Some

3

time later, an agent of Canterbury Lots contacted plaintiff to discuss eviction options.

On March 6, 2012, plaintiff received a letter from Chase acknowledging her "recent mortgage payment" that was mailed to Chase in July 2011 and to inform her that the payment was delayed because it was mailed to the wrong address. On or about March 23, 2012, Chase notified plaintiff that it would file for rescission of the foreclosure sale. A notice of rescission of trustee's deed upon sale was made on March 2012.

In April 2012, plaintiff spoke with a Chase representative who assured her that Chase was "trying to work out the details of the rescission and that Chase had approved a modification" for her. The representative communicated the loan terms over the phone, which were acceptable to plaintiff. She faxed a letter to Chase memorializing the terms communicated to her. In May 2012, plaintiff received a letter from Chase stating she had been approved for a loan modification period plan, under which she would be responsible for paying $1,622.90 per month. The letter stated that Chase would not finalize a foreclosure sale during the trial modification period. Plaintiff began making the monthly payments.

On October 3, 2012, plaintiff received a letter from Chase detailing the loan modification terms. These terms "did not coincide with the numbers presented to Plaintiff [orally] on April 24, 2012." Feeling "taken advantage of by Chase," plaintiff sent Chase a letter "demanding the terms represented to her via telephone" in April 2012. On January 28, 2013, plaintiff received a written notification that she was no longer eligible for the loan modification because she failed to return the final modification agreement within the required time frame. On April 1, 2013, plaintiff stopped making payments to Chase "as she was denied a good faith modification offer."

Plaintiff filed a complaint on April 25, 2013, alleging various causes of action against defendants. The FAC, the operative complaint, was filed on August 20, 2013, alleging (1) wrongful foreclosure; (2) violation of Civil Code section 2924, subdivision (a)(6); (3) breach of oral contract; (4) promissory estoppel; (5) violation of the covenant of good faith and fair dealing; (6) violation of Business and Professions Code section 17200; (7) negligent misrepresentation; and (8) intentional infliction of emotional

4

distress. Defendants demurred and requested that the trial court take judicial notice of documents in support of the demurrer. The trial court took judicial notice of the documents and sustained the demurrer as to all causes of action without leave to amend. A judgment of dismissal was entered on February 20, 2014.

This timely appeal followed.

## DISCUSSION

### I

At the outset, we address plaintiff's argument that the trial court improperly considered the judicially noticed documents for the truth of their contents. Other than referring to them as recorded foreclosure documents, however, plaintiff does not elaborate on or identify the objectionable content contained in these documents, nor does she include a citation to these documents in the appellate record. "It is the burden of appellant to provide an accurate record on appeal to demonstrate error. Failure to do so precludes an adequate review and results in affirmance of the trial court's determination. [Citation.]" (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1.)

Regardless of this omission, our decision does not rely on the judicially noticed documents considered by the trial court. Rather, we rely on the facts pleaded in the FAC and its accompanying exhibits. (*Pich v. Lightbourne* (2013) 221 Cal.App.4th 480, 490.)

### II

"In reviewing an order sustaining a demurrer, we independently evaluate whether the operative complaint states facts sufficient to state a cause of action. [Citation.] We accept as true all facts alleged in the complaint [citation], except when they are contradicted by exhibits attached to the complaint [citations] or matters subject to judicial notice [citation]." (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34.)

A trial court's decision to sustain a demurrer without leave to amend is reviewed for abuse of discretion. (*Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 976.) "It is an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable probability that the defect can be cured by

5

amendment.  [Citation.]  The burden is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action.  [Citation.]" (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226.)

A.     *Wrongful Foreclosure*

Defendants argue that because the foreclosure sale was rescinded, plaintiff cannot state a claim for wrongful foreclosure.  In *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, Division Three of the Fourth District was presented with this question, but did not resolve the case on this ground because it had not been properly briefed and raised in the trial court.  Nevertheless, the court noted, even "assuming there was a 'rescission' of the foreclosure sale, we cannot say as a matter of law . . . that [plaintiff] cannot plead any cause of action." (*Id.* at p. 62.)  Defendants have not cited to any authority holding that a rescission of a foreclosure sale invalidates a claim for wrongful foreclosure.  Therefore, we address the plaintiff's substantive arguments.

In her briefing, plaintiff raises only two arguments to support her wrongful foreclosure claim:  (1) that her FAC sufficiently alleged a wrongful foreclosure cause of action against defendants on the grounds that "her Note was sold, transferred and improperly securitized" and (2) defendants did not have authority to foreclose on her home because they did not have "actual physical possession of the Note at that point in time."  We consider each argument in turn.  (See *Godon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 980, fn. 10 [Court of Appeal reviews only the arguments raised in plaintiff's opening brief].)

1.     *Securitization of Plaintiff's Loan*

Plaintiff does not have standing to challenge the assignment of the deed of trust, regardless of whether plaintiff's loan was securitized.  In *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85, this court held that there was no prejudice suffered by the plaintiffs when they "d[id] not dispute that they are in default under the note," "[t]he assignment of the deed of trust and the note did not change the[ir] . . . obligations under the note," and "there [was] no reason to believe that . . . the original lender would have refrained from foreclosure in these circumstances."  Thus,

6

plaintiffs "have no standing to complain about any alleged lack of authority or defective assignment. [Citations.]" (*Ibid.*) To establish standing, plaintiff points to *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094, which held that borrowers may challenge the improper securitization of the deed of trust. But the reasoning in *Glaski* has been criticized as "based on a questionable analysis of New York trust law" and "inconsistent with the majority line of cases." (*In re Sandri* (Bankr. N.D.Cal. 2013) 501 B.R. 369, 374; see also *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513-515; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272.) We agree with the majority view and find that plaintiff lacked standing to allege defects in the assignment, transfer, or securitization of the deed of trust absent showing of prejudice. She has not alleged such prejudice, nor has she demonstrated that she would be able to amend the FAC to establish prejudice.

2.     *Physical Possession of the Note*

Plaintiff cites to no authority indicating that defendants needed physical possession of the note in order to foreclose on her property, and courts have explicitly rejected the argument. (*Jenkins v. JP Morgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 513 ["[W]e find the statutory provisions . . . do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale"]; *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440 ["We . . . see nothing in the applicable statutes that precludes foreclosure when the foreclosing party does not possess the original promissory note"].) Civil Code section 2924, subdivision (a)(1) entitles "[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents" to file a notice of default upon a property. CRC, the original trustee, was entitled to initiate foreclosure under this provision. Plaintiff's arguments are not well taken.

B.     *Violation of Civil Code Sections 2924, Subdivision (a)(6) and 2924.11*

The FAC alleged violations of Civil Code sections 2924, subdivision (a)(6) and 2924.11, provisions of the Homeowners Bill of Rights Act (HBOR). The trial court sustained the demurrer as to this cause of action because the HBOR did not take effect

7

until January 1, 2013.  (*Lueras v. BAC Home Loans Servicing, LP, supra,* 221 Cal.App.4th at p. 86, fn. 14.)  The notice of default on plaintiff's property was filed in May 2009, and the foreclosure sale in question took place in March 2012.  "[U]nless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application' [citation]."  (*Myers v. Phillip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841.)  No such retroactivity provision exists in the HBOR, and plaintiff does not point to extrinsic sources that make it "very clear" that the HBOR was intended to apply retroactively.  (See *Rockridge Trust v. Wells Fargo, N.A.* (N.D.Cal. 2013) 985 F.Supp.2d 1110, 1152 [HBOR is not retroactive].)

The trial court properly sustained the demurrer under this cause of action.

C.      *Breach of Oral Contract*

The FAC alleges Chase breached its oral contract with plaintiff to postpone foreclosure of her home while her loan modification application was pending and to honor the terms of the loan modification communicated to her in April 2012.

"As a general rule, a gratuitous oral promise to postpone a foreclosure sale or to allow a borrower to delay monthly mortgage payments is unenforceable.  [Citations.]"  (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1039.)  Chase's representations to plaintiff regarding the delay of the foreclosure sale did not constitute an oral contract because plaintiff furnished no consideration in exchange for Chase's oral promise.  Plaintiff suggests that her payments under the trial modification program, which she tendered to Chase in 2011 and 2012, constituted consideration.  But these payments amounted to nothing more than what was due to Chase under her existing loan.  (See 1 Witkin, Summary of California Law (10th ed. 2005) Contracts, § 218, p. 251 ["[D]oing or promising to do what one is already legally bound to do cannot be consideration for a promise"].)  Because plaintiff pleaded no facts that suggest there was consideration in exchange for Chase's promises, there was no contract formed, and no breach by Chase.

8

Plaintiff's secondary argument is that the written terms offered to her in October 2012 "was about $137,498.30 less than what Plaintiff was initially promised." Her claim is contradicted by the written terms that Chase sent to her in October 2012, attached as an exhibit to the FAC. In April 2012, Chase offered loan modification terms to plaintiff over the phone. The terms of the April 2012 loan modification offer were as follows: (1) a principal writeoff reducing her outstanding balance to $384,600; (2) a principal deferment of $17,900 due at the end of the loan term; (3) 2 percent interest for the first five years, 3 percent interest for the sixth year, and 3.87 percent interest for the remaining 34 years. In October 2012, Chase followed up with final loan modification papers. Plaintiff alleges these terms "provided a reduction in the principal balance by $65,626.10, less than about 30% of the $203,124.00 principal balance reduction" represented in the April 2012 modification terms. However, looking to the actual terms that were sent to plaintiff, it is clear they provided a nearly identical reduction in the principal balance and in fact, offered *better* interest rates than the April 2012 terms. The October 2012 terms offered a reduction in principal of $65,626.10 *per year* for three years, in addition to a monthly benefit of $83.33 for five years. The written terms indicated her new principal balance would be $384,600—exactly what was represented to plaintiff in her April 2012 phone call with Chase. The October 2012 terms also included a $17,900 principal deferment due at the end of the loan term and provided 2 percent interest for the first five years, 3 percent interest for the sixth year, and 3.5 percent interest for the remaining 34 years. Plaintiff, apparently misunderstanding these terms and feeling "taken advantage of by Chase," did not accept the loan modification terms. There was no breach by Chase.

D.      *Violation of Business and Professions Code Section 17200*

The FAC alleges defendants, in violation of the Unfair Competition Law (UCL), "engaged in deceptive business practices with respect to the handling of the loan, the loan modification process and the improper foreclosure sale of Plaintiff's home as described within this Complaint." The FAC seeks injunctive relief pursuant to Business and Professions Code section 17203. The trial court sustained the demurrer to this claim on the grounds that plaintiff lacked standing for failure to plead an injury caused by

9

defendants and that she failed to allege sufficient facts to show defendants engaged in acts or practices that violated the UCL.

Regardless of whether plaintiff had standing to bring this claim, we find that plaintiff did not sufficiently plead facts to show she was entitled to injunctive relief. Though plaintiff does not point out with specificity what conduct rose to the level of "deceptive business practices with respect to the handling of [her] loan, [and] the loan modification process," the FAC makes clear that Chase ceased its allegedly wrongful conduct when it filed a notice of rescission of trustee's deed upon sale, offered plaintiff loan modification terms that were acceptable to her, and did not foreclose on her property while she made payments under the program.

"Injunctive relief is appropriate only when there is a threat of continuing misconduct. [Citations.]" (*Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 463.) Accordingly, plaintiff did not plead sufficient facts to show entitlement to injunctive relief; she did not establish a reasonable probability that the past wrongful acts alleged in the FAC will continue. (See *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1012 [In a UCL case, injunctive remedy should not be exercised """"in the absence of any evidence that the acts are likely to be repeated in the future""""].) The trial court properly sustained the demurrer as to this claim.

E.      *Leave to Amend*

Plaintiff challenges the trial court's decision not to grant leave to amend the FAC. Leave to amend may be granted only if there is a reasonable possibility that the defects in the complaint can be cured by amendment. (*Hood v. Hacienda La Puente Unified School Dist.* (1998) 65 Cal.App.4th 435, 438-439.) "'The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]'" (*Ibid.*) Plaintiff has not met this burden, but simply states in her opening brief that "the trial court should have, at the very least, granted leave to amend so that Plaintiff could clarify her arguments and be afforded sufficient time to conduct discovery." As plaintiff did not demonstrate a reasonable possibility that amending her complaint would cure the aforementioned defects, we find no abuse of discretion in the trial court's decision to deny leave to amend.

10

F.      *Remaining Causes of Action*

The trial court sustained defendants' demurrer to all claims in the FAC.  Plaintiff's opening brief challenges only the court's sustaining of defendants' demurrer as to wrongful foreclosure, violation of Civil Code sections 2924 and 2924.11, breach of oral contract, and violation of Business and Professions Code section 17200.  Therefore, plaintiff has forfeited her right to challenge her claims for promissory estoppel, breach of the covenant of good faith and fair dealing, negligent misrepresentation, and intentional infliction of emotional distress.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994 [issues not raised in appellant's brief are deemed waived].)

## DISPOSITION

The judgment is affirmed.  Each side is to bear its own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**


                                                                EPSTEIN, P. J.


We concur:



WILLHITE, J.



COLLINS, J.


11